UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JOY SINGLETON,

Plaintiffs,

-against-

THE CITY OF NEW YORK and NYPD POLICE OFFICERS JOHN DOES NOS. 1, 2, 3, ETC., (whose identity are unknown but who are known to be personnel of the New York City Police Department), all of whom are sued individually and in their official capacities,

Defendants.

---

26CV1099

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff, JOY SINGLETON, by her counsel, AARON M. RUBIN, hereby alleges as follows, upon knowledge as to herself and her acts, and as to all other matters upon information and belief:

1. Plaintiff brings this action to recover compensatory and punitive damages, attorney's fees and costs, pursuant to 42 U.S.C. § 1983 for violations of her civil rights under the United States Constitution and New York State law caused by the conduct of Defendant police officers and the City of New York.

## PARTIES AND RELATED ENTITIES

2. Defendant CITY OF NEW YORK ("CITY") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. The CITY OF NEW YORK is authorized by law to maintain the New York City Police Department, ("NYPD"), which acts as the City's agent in the area of law enforcement and for which it is ultimately responsible. The CITY OF NEW YORK assumes the risks incidental to the maintenance of the NYPD, and the

employment of its police officers. Additionally, the CITY OF NEW YORK was at all times relevant herein the public employer of Defendant police officers.

3. Defendant police officers were employed by the NYPD and acted under color of state law in the course and scope of their duties and functions as agents, employees and officers of the CITY OF NEW YORK. The identity and number of police officers are still unknown. Those who are unknown at this time are being sued as "John Does" until their names can be determined, and may be male or female. All of the police officers sued herein are alleged to have acted in both their official and individual capacities.

4. Plaintiff Joy Singleton is an adult female resident of Queens.

## **Jurisdiction and Venue**

5. Jurisdiction in this Court is established pursuant to 28 U.S.C. §§ 1331 and 1343.

6. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide her claims brought under New York State law.

7. A notice of claim of Plaintiff's intent to sue for the violation of her civil rights, including false arrest, false imprisonment, malicious prosecution, and abuse of process, and common law torts, was duly filed with the City of New York on February 11, 2025, with a supplemental notice of claim subsequently filed on March 7, 2025, one day after the underlying prosecution of Plaintiff was dismissed.

8. Pursuant to New York General Municipal Law § 50-H, the City of New York conducted an examination of Plaintiff by deposition held on April 23, 2025.

9. To date, the City of New York has not made an offer to settle Plaintiff's claims.

10. Venue is properly laid in the Eastern District of New York under 28 U.S.C. §§ 1391(b) and (c) because the incident giving rise to the claims took place in Queens County.

11. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## Statement of Facts

12. On or about November 27, 2024, at around 4 p.m., Plaintiff Joy Singleton returned to her apartment in Far Rockaway, Queens (hereinafter, the "Apartment") after completing a full day of work.

13. Ms. Singleton was accompanied by her brother, who arrived with her at the Apartment at approximately the same time.

14. Already present in the Apartment was Christopher, who was Ms. Singleton's boyfriend of approximately one year.

15. Christopher did not reside at the apartment. He was not on the lease, had no mail delivered there, and had no arrangement to live there. The Apartment was leased solely in the names of Ms. Singleton and her son.

16. Christopher had been in the Apartment since the morning.

17. Christopher lived in the Bronx.

18. Ms. Singleton had recently discovered, approximately two weeks prior, that Christopher had relapsed for substance abuse. On or about November 17, 2024, Christopher had called the police on himself requesting to be taken to the hospital, and had admitted to Ms. Singleton that he had relapsed.

19. On November 27, 2024, Christopher appeared to be intoxicated when Ms. Singleton arrived at her Apartment. He was stalling and refusing to leave, despite Ms. Singleton's plan to drive him to his home in the Bronx

20. Less than fifteen minutes after Ms. Singleton arrived at her Apartment, Defendant police officers knocked on the door.

21. Upon information and belief, Christopher had called the police. Ms. Singleton was not aware of any call and was surprised by the officers' arrival.

22. Upon information and belief, when Christopher's sister, Nicole, later asked Christopher why he had called the police, he responded in sum and substance, "bitches will do it, so I did it," revealing a retaliatory motive unrelated to any actual criminal conduct by Ms. Singleton.

23. Ms. Singleton opened the door and observed at least four to five uniformed NYPD officers. She asked the officers what was going on and told them everything was all right.

24. The officers attempted to walk into the Apartment. Ms. Singleton stopped them and asked them to explain themselves.

25. The officers then addressed Christopher, who was standing behind Ms. Singleton, and asked if he had called. Christopher confirmed he had.

26. Christopher then stated to the officers, with an exaggerated head motion, “we were arguing and she hit me in my head.”

27. A Defendant police officer briefly glanced at Christopher’s forehead and stated, “yeah he got a mark,” and immediately ordered Ms. Singleton to turn around and put her hands behind her back.

28. There was no mark on Christopher’s head.

29. Defendant police officers were aware, or should have been aware, that Christopher was the complaining witness and that he and Ms. Singleton were in an intimate boyfriend-girlfriend relationship of approximately one year.

30. Despite this knowledge of an intimate relationship between the complaining witness and the accused – a circumstance that is widely known to generate false and retaliatory complaints and that demands heightened investigative scrutiny – the Defendant officers took no investigative steps whatsoever to corroborate Christopher’s accusation before arresting Ms. Singleton.

31. The Defendant officers did not interview Ms. Singleton’s brother, who was present in the Apartment and who stated to the officers in sum and substance, “we literally just got here, what’s going on, why is she being arrested.” As an independent eyewitness, Ms. Singleton’s brother would have contradicted Christopher’s account and confirmed that no argument or assault had taken place.

32. The Defendant officers did not investigate Christopher’s apparent state of intoxication, despite it being visibly obvious at the time.

33. The Defendant officers did not investigate Christopher’s claim that he resided at the apartment. Christopher told the officers he had been living at the

Apartment since February, which was false. Ms. Singleton informed the officers that Christopher was not on the lease, had no mail there, and did not live there. She offered to produce the lease and invited the officers to search the closets and drawers to verify that Christopher had no belongings in the Apartment.

34. The Defendant officers refused to examine the lease, refused to ask Christopher for any proof of residency, and refused Ms. Singleton's offer to search the Apartment to disprove Christopher's claim. Instead, they simply repeated Christopher's uncorroborated statement that he lived there.

35. The Defendant officers did not conduct any meaningful examination of Christopher's forehead beyond a cursory glance, and did not photograph, document, or otherwise verify the alleged injury.

36. If the Defendant officers had performed even the most basic investigative steps – interviewing the independent eyewitness who was present, verifying Christopher's false residency claim, evaluating his apparent intoxication, and considering that Ms. Singleton had arrived at her own Apartment only minutes before – they would have discovered that Christopher's accusation was uncorroborated and contradicted by the available evidence, and that probable cause did not exist to arrest Ms. Singleton.

37. Instead, the Defendant officers arrested Ms. Singleton based solely on the unverified word of Christopher, a man they knew to be her intimate partner, without performing any of the investigative due diligence that the circumstances demanded.

38. Ms. Singleton was pulled from her apartment by Defendant police officers, handcuffed with metal handcuffs behind her back, and escorted out of the building in front of bystanders and the building concierge.

39. Ms. Singleton's personal belongings – including her jacket, car keys, phone, and work identification – were placed on the floor outside her apartment by Defendant police officers after they searched her. Ms. Singleton repeatedly asked the officers to give her belongings to her brother. The officers refused and instead gave her belongings to Christopher, the very person who had made the complaint against her, and whom Ms. Singleton had told them did not live there.

40. Ms. Singleton told the officers that if they were removing her from the Apartment, they should not leave Christopher in her Apartment because he did not live there and she was at risk of losing her property. The officers disregarded this request.

41. Ms. Singleton was transported to the 101st Precinct in Far Rockaway.

42. Defendant police officers charged Ms. Singleton with crimes including misdemeanor assault.

43. At the precinct, Ms. Singleton was fingerprinted, photographed, and searched. She was handcuffed by one wrist to a wall near a bathroom because no cell was available. She remained handcuffed and detained at the precinct for approximately twelve or more hours into the next day, November 28, 2024.

44. Ms. Singleton complained that the handcuffs were too tight and that her wrists hurt. She received no response initially, although one officer eventually loosened the handcuffs.

45. Ms. Singleton repeatedly requested food and drink. She was not provided anything to eat or drink for approximately eight to ten hours.

46. While at the precinct, a Defendant officer told Ms. Singleton in sum and substance: “We had to do this because we had the body cams on.” This statement demonstrates that the officers knew the arrest was not supported by probable cause but proceeded solely because they believed the body camera footage required them to follow through.

47. The same officer also made a gesture indicating that Christopher was mentally unwell, circling his hand near his head, and told Ms. Singleton that she “made a bad choice with that guy,” further demonstrating the officers’ awareness that Christopher was not a credible complainant.

48. Ms. Singleton was transported to Central Booking on November 28, 2024, where she was processed and appeared before a judge.

49. Ms. Singleton was charged with misdemeanor assault and harassment, based on allegations in a complaint sworn to by a Defendant police officer and filed in criminal court in Queens County.

50. No bail was set and Ms. Singleton was released after her arraignment. Ms. Singleton was represented by a court-appointed attorney.

51. Upon returning to her Apartment after her release, Ms. Singleton discovered that Christopher, whom the Defendant officers had left in her Apartment despite her repeated requests to the contrary, had damaged her property and stolen her belongings, including a laptop, a phone, a purse, and other items. The door lock was

broken, the peephole was damaged, items were smashed, and the Apartment was vandalized.

52. Ms. Singleton subsequently filed a police report against Christopher.

53. Ms. Singleton returned to court approximately two additional times. The case was adjourned once and then dismissed in its entirety on or about March 6, 2025.

54. The conduct by Defendants caused Ms. Singleton to suffer loss of liberty, emotional and psychological pain, depression, anxiety, embarrassment, humiliation, reputational harm, financial loss including lost wages, suspension from her employment, property damage and theft, and the deprivation of her federal and state Constitutional rights.

## PLAINTIFF'S FEDERAL CLAIMS AGAINST DEFENDANT POLICE OFFICERS

55. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

56. In committing the acts and omissions complained of herein, Defendant police officers acted under color of state law to deprive Plaintiff of her rights under the First, Fourth and Fourteenth Amendments to the United States Constitution.

57. The conduct by Defendants was a direct and proximate cause of Plaintiff's false arrest, unlawful imprisonment, malicious prosecution and abuse of process, all in violation of 42 U.S.C. Section 1983.

**PLAINTIFF'S FEDERAL CLAIMS AGAINST CITY OF NEW YORK**

58. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

59. The City of New York directly caused the Constitutional violations suffered by Plaintiff.

60. Upon information and belief, the City of New York was aware that one or all of Defendant police officers were unfit officers who previously committed the acts alleged herein and have a propensity for unconstitutional conduct.

61. Upon information and belief, despite its knowledge of the Defendant police officers' prior conduct and propensities, the City of New York (a) exercised deliberate indifference by failing to take remedial action, (b) failed to properly train, supervise and discipline Defendant police officers and improperly retained and utilized them, and (c) failed to adequately investigate prior complaints filed against the officers.

62. The aforesaid conduct by the City of New York violated plaintiff's rights under 42 U.S.C. Section 1983 and the United States Constitution.

**PLAINTIFF'S STATE LAW CLAIMS AGAINST DEFENDANT POLICE OFFICERS**

63. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

64. The conduct by Defendant police officers amounted to false arrest, false imprisonment, malicious prosecution and malicious prosecution in violation of New York state law.

**PLAINTIFFS' STATE LAW CLAIMS AGAINST THE CITY OF NEW YORK**

65. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

66. Because Defendant police officers were acting within the scope of their employment as members of the NYPD during the incident in question, the City of New York is vicariously liable for the violations of civil rights set forth herein, including but not limited to false arrest, false imprisonment, malicious prosecution and abuse of process.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands the following relief jointly and severally against all defendants:

(1) Compensatory damages in an amount to be determined by a jury at trial;

(2) Punitive damages in an amount to be determined by a jury at trial;

(3) The convening and empanelling of a jury to consider the merits of the claims herein;

(4) Costs, interest and attorney's fees;

(5) Such other and further relief as this court may deem just and proper.

Dated: New York, New York
February 25, 2026

AARON M. RUBIN
Attorney for Plaintiff

__/s__________________
BY: Aaron M. Rubin, Esq.

99 Wall Street Suite 1130
New York, New York 10016

(212) 725-4600
arubin@amresquire.com